Per Curiam.

In order to sustain the judgment of the General Term, the defendant must make out that it has parted with its money in reliance upon some assertion of the plaintiff in respect to the check, and which the plaintiff is, therefore, bound to make good. The whole question is : What did the plaintiff assert ? TJpon this question we agree with the views expressed by the learned referee. When a check is presented for certification to a bank on which it is drawn, the purpose is to ascertain, with certainty, what the bank alone can know, and that is, whether the drawers of the check have funds sufficient to meet it; and, further, to obtain the engagement of the bank that those funds shall not be withdrawn from the bank by the drawers of the check. To this extent the knowledge of the bank must, of necessity, enable it safely to go, in the way of assertion; and its own power over its own funds will suffice to protect it as to its obligation. But if the doctrine contended for in opposition to this view is correct, and the certifying bank is bound to warrant, not only the genuineness of the drawers’ signature and the sufficiency of their credit, but also the genuineness of the check in all its parts, including the specification of the amount to be paid, and the names and identity of the payees, then obviously there must occur an immediate and complete change in the modes of doing business, which would defeat and practically put an end to the use of certified checks. For no *72 bank, under such a rule, could safely certify a check without, in the first instance, investigating its origin and history by inquiry of its makers and payees. The burden of such inquiries could not be borne without interfering with, or interrupting the other necessary business of the bank, and the practice of certifying checks would have to be abandoned, or a staff of inquirers instituted in every bank, specially charged with these duties. It is plain that banks, in self protection, would be compelled to refuse altogether to certify checks, and that this convenient and useful invention of modern business would come to an end. The mischief would arise from charging the banks with a knowledge that, in the nature of things, they cannot possess. With their responsibility limited to the facts within their knowledge, the practice imposes no burden upon banks, and subserves the convenience of commerce. No construction ought to be put on acts in the usual course of business, which will impose upon the parties interested the necessity of immediately altering it. For, as the question is, necessarily, what did the parties mean, we cannot, without violent construction, attribute to them a meaning so burdensome that it will necessitate a change of the usual way of doing business. Such a meaning we know they cannot have entertained. We have been referred to various expressions in different cases, stating in quite positive and general terms, the obligation of banks upon certified checks. (Farmers' Bank v. Butchers’ Bank, 16 N. Y., 125; First Nat. Bank v. Leach, 52 id., 350 ; Cooke v. State Nat. Bank of Boston, id., 115.) These are to be construed with reference to the facts disclosed in the cases. In such cases the question has been, in various forms, whether the bank certifying a check, could defend itself upon the ground of want of authority in the certifying officer, or that the drawer had not funds. These being facts within the knowledge of the certifying bank, it was necessarily precluded from disputing its certificate. But there is no ground of reason or authority for extending the rule to matters not being especially within the knowledge of the certifying bank, such as those which *73 form the ground, in this case, on which the bank’s claim of immunity rests.
The order of the General Term granting a new trial should be reversed, and the judgment entered on the report of the referee affirmed.
All concur.
Order reversed, and judgment accordingly.
Upon a motion for reargument in the foregoing action, the following opinion was delivered :
Allen, J.
The motion for a reargument of the appeal in the present action, upon its merits, is not founded upon any allegation that any question decisive of the case, and duly submitted by counsel, has been overlooked by the court, or that the decision is in conflict with an express statute or with a controlling decision, either overlooked by the court or to which the attention was not drawn through the neglect or inadvertence of counsel. As early as 1865, it was held by this court, in Mount v. Mitchell (32 N. Y., 702), that motions for reargument of cases heard and decided, should be founded on papers showing clearly some one of these facts, and to this general rule the court proposes to adhere, and motions for reargument will not be entertained unless brought within it.
The affidavits upon which the motion in this instance is founded, and the statements put forth in them are not competent on this motion, and would -not be competent as evidence for any purpose in any stage of the action. They are entitled to great respect by reason of the character and standing of the affiants, the distinguished positions they occupy, and their eminent fitness by reason of their great intelligence, and long and large experiences, to speak upon the subject of commercial usages, and moneyed transactions. Usage and custom properly proved can impress upon words and phrases a peculiar or technical meaning, and control the interpretation and effect of commercial contracts, but such custom and usage must be proved and determined, as a question of fact, upon *74 the trial, and proof of them cannot be received by an appellate tribunal, having only jurisdiction of questions of law, either in support or impeachment of a judgment. But an insurmountable objection to the evidence now offered in any stage of the action, would be that neither of the eminent gentlemen whose affidavits are presented, profess to have any knowledge of any custom or usage, either general or particular, by which any meaning or interpretation has been given to the words used in the certifying of checks by the bank upon which they are drawn, or effect to the act of certification other than that which the language used in its ordinary and popular sense would imply. There is no pretence that the enlarged liability now sought to be fixed upon a bank certifying a check, has ever been recognized, acknowledged, or acted upon. No such practical interpretation has ever been put upon a certification as is now insisted upon. ■ General usage, and not individual opinions, make a custom that can control in the interpretation of contracts. In the judgment given the court simply, as was its duty, interpreted the contract or obligation of the certifying bank, as expressed in the certificate, and gave it legal effect as thus interpreted. No fact, custom, or usage, is stated in the affidavits, tending to show that by the custom of bankers or merchants the certificate had acquired a different signifi cation, and imported a different obligation. While the opinion of any one of the gentlemen with whose opinions we are favored, adverse to our conclusions, might lead us to hesitate, we cannot yield our convictions as to the legal meaning and effect of the transaction. If, perchance, we have unduly limited the liability of the certifying bank, and have not given to the act of certification all the potency which those dealing in certified checks think it should have, for the convenience of commerce and the ready transaction of business, a slight modification in the form of the certificate will fully express the enlarged obligation, and meet the views of those who differ with the court in the interpretation of the contract in the form now made. If the counsel for the respondent is not in error in his views, very earnestly pressed upon us, banks *75 and "bankers will at once conform to the necessities of the case, and adopt a form of certification which will meet the views of those interested, and make the certifying bank not only a voucher, and liable for the genuineness of the signature of the drawer of the check, and the sufficiency of his account to meet it, when it shall be presented for payment, but also for the genuineness of the body of the instrument, the indorsement of the payee, and every other indorser, and the title of the holder. There is no legal objection to banks assuming a liability to this extent if they please to do so, but the intent should be plainly manifested by the terms of their undertaking. As a promissory obligation, courts have given the certification of a check the same effect as the acceptance of a bill of exchange by the drawee. They have, also, adapting the well settled rules of law to this particular and very convenient mode of transacting business, regarded the act of certifying a check as, for some purposes, the equivalent of a payment to the person presenting it and claiming to be the holder, and have held that, when a payment actually made could be recovered back as made by mistake, there was no liability by reason of the certificate that could be enforced by law. To hold that the act of certifying a check is an act of graver import, involving greater responsibilities than the acceptance of a bill of exchange, or the actual payment of the same check, would be a violation of all the analogies of the law, and unreasonable. Whether it should be the duty of the person taking a check, and who knows or may know the individual with whom he deals, and may easily trace the title and ascertain the genuineness of the check in all its parts, or the bank to whom it is presented in the hurry of business, and, perhaps, by a stranger wholly unknown, or an irresponsible messenger, for certification upon the instant and without opportunity for inquiry, to ascertain all the extrinsic facts which are now claimed to be implied and warranted by the act of certification, may not be for us to determine. But to us it seemed more reasonable that that duty should rest upon the one receiving the cheek. It is *76 believed that banks do not always demand identification or. proof of title in the person presenting a check for certification ; and if they merely certify to the genuineness of the signature of the drawer' and the sufficiency of the fund, the other matters can safely be left until payment is demanded. But upon the theory of the defendant’s counsel a bank must ascertain to a certainty, before certifying, that the check has not been altered or tampered writh, and that the indorsements are genuine, that is, that the check is genuine in all its parts, and that the apparent holder has a valid title. It is evident, that to cast all this responsibility upon the certifying bank would put a stop to the certifying of checks, except when presented by the drawer or under very peculiar circumstances.
It was thought by the judge by whom the opinion of the court was prepared in this action, and by the court, that the question presented was too well settled by authority, as well as upon principle, to require an elaborate argument in vindication of the judgment given. A brief reference to some of the authorities and the principles decided is all that will be attempted now. That an acceptor of a bill of exchange by acceptance only admits the genuineness of the signature of ' the drawer, and does not admit the genuineness of the indorsements, whether of the drawee of the same bill, or of any other person whose name appears upon it, or any other part of the bill, is elementary and sustained by an unbroken current of .authority. (Story on Bills, §§ 262, 263, and cases cited in notes.) Judge Story says the reason usually assigned is, that when the bill is presented for acceptance the acceptor looks to the handwriting of the drawer with which he is presumed to be acquainted, and he affirms its genuineness by " giving credit to the bill, by his acceptance in favor of the legal holder thereof. But the acceptor cannot be presumed to have any such knowledge of the other facts upon which the rights of the holder may depend. In analogy to this, courts have held that the certificate only holds the bank for the truth of the facts presumed to be within its own knowledge, viz., the genuineness of the signature of the drawer and the state *77 of his account. Moneys paid upon checks and drafts which have been forgeries, either in the body of the instrument or in the indorsements, or in any respect, except the name of the drawer, have uniformly been held recoverable as for money paid by mistake, and expressly upon the ground that payment, as an admission of the genuineness of the instrument, was the same as an acceptance, and only operated as an admission of the signature of the drawer. (Canal Bank v. Bank of Albany, 1 Hill, 287.) The' doctrine is applied to cases of bills altered in the body, by the raising of the amount for which they were drawn, and also to those in which the name of the payee has been feloniously changed, in several cases, and uniformly applied whenever the question has arisen in this State. (Bank of Commerce v. The Union Bank, 3 Comst., 230.) Judge Rugóles, speaking for the court in this case, says: “ There is no ground for presuming the body of the bill to be in the drawer’s handwriting, or in any handwriting known to the acceptor.” And again, after stating the presumption that the drawee is acquainted with the drawer’s signature, the same learned judge says: “ But to require the drawee to know the handwriting of the residue of the bill is unreasonable. It would, in most cases, be requiring an impossibility. Such a rule would be not only arbitrary and rigorous, but unjust.” National Bank of Commerce v. National Mechanics’ Banking Association (55 N. Y., 211) ; National Park Bank v. Ninth National Bank (46 id., 77), reaffirm the same doctrine. The decisions of the courts, especially those of this State and of the United States, are equally uniform as to the import and effect of a certification of a bank check by the drawee as “good.” Such a certificate has been held to be equivalent to an acceptance of a bill of exchange, and to be an admission simply of the genuineness of the signature of the drawer, and that there are funds for its payment. (Farmers and Mechanics’ Bank v. Butchers and Drovers’ Bank, 16 N. Y., 125; Barnes v. Ontario Bank, 19 id., 152, 159; Meads v. Merchants’ Bank, 25 id., 143; Irving Bank v. Wetherald, 36 id., 335 ; Mer *78 chants’ Bank v. State Bank, 10 Wall., 604.) Espy v. Bank of Cincinnati (18 Wall., 604) was, in its circumstances, very similar to the present case. A check had been raised from $26.50 to'$3,920, and the name of the payee changed from “ H.,” to “ E. H. & Co.,” and was offered to E. H. & Co. in payment for bonds and gold, purchased by a stranger. E. H. & Co. sent the check for information to the bank, whose teller replied, “ It is good,” or “ It is all right.” E. H. & Co. received the check, and delivered the bonds and gold, and passed the check through the clearing-house. The bank paid the check, but, on discovering the forgery, brought an action, and recovered of E. H. & Co. the money paid. The court held the following, among other propositions: “First. That when money is paid by mistake on a raised check, neither party being in fault, it may be recovered back'as paid without consideration, Second. That when a party to whom such check is offered, sends it to the bank on which it is drawn for infoimation, the law presumes that the bank has knowledge of the' drawer’s signature, and of the state of his account, and it is responsible for what may be replied on these points. Third. That unless there is something in the terms in which information is asked that points the attention of the bank officer beyond these two matters, his response that the check is good will be limited to them, and ,will not extend to the genuineness of the filling in of the check as to payee or amount.” . The case at bar is distinguished from the reported case by the fact that, in the one the certification was verbal, and in the other it is in writing, a circumstance which cannot, as we think, distinguish them in principle. The representation and assurance that the check is “ good,” or “ all right,” is the same in legal effect as well as in its effect in influencing the action of others, whether made orally or written upon the face of the paper. It is the assertion of the fact, and not the mode of its communication, that gives it effect, and imposes a legal obligation. It is only assertions of facts within the knowledge, or which may reasonably be presumed to be within the knowledge of the party making them, that *79 imposes an obligation, and for the truth of which the law holds him legally responsible. An inquiry may reasonably and properly be made of the drawee of a check as to the genuineness of the signature of the drawer and the state of his account, but a resort would be had to other sources of information to learn the consideration of the check, by whom the body was written, the genuineness of the indorsement and the title of the payee. As to such matters the drawee could not be supposed, ordinarily, to have any information, and would not be called upon or expected to give answer in respect to them. Hence, in all reason, as well as legally, the inquiring of a drawee in respect to a check, and the response, whether verbally or in writing, that it is “good,” must be held, in the absence of circumstances indicating a wider reach of inquiry and a' broader answer, to relate to those facts, and those only, of which the drawee is presumed to have knowledge, viz., the two facts before mentioned.
All the decisions stand upon the same general principle, first authoritatively decided in Price v. Neal (3 Burr., 1354), applied to meet the varying circumstances of individual cases, and they are all harmonious and consistent with each other, and the well established doctrine upon which they rest. The judgment given in this case was a natural and logical sequence of this unbroken current of authority, and a different judgment would have tended directly to the unsettling of rules of commercial law of long standing, by which business transactions have been for long years governed and controlled.
This further consideration of the question involved was due rather to the views and opinions of the distinguished bankers and merchants expressed to us, than to any intrinsic difficulties, or any doubts entertained by the court.
The motion for a reargument must be denied, with costs.
All concur.
Motion denied.